IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-764-FL

In re:                                              )
                                                    )
ROBERT V. RODGERS,                                  )
                                                    )
                    Debtor,                         )
_____                     )
                                                    )
ROBERT V. RODGERS,                                  )
                                                    )
                    Plaintiff,                      )                    ORDER
            v.                                      )
                                                    )
PREFERRED CAROLINAS                                 )
REALITY, INC.; JAMES E. ALLEN,                      )
JR.; JIM ALLEN GROUP, INC.; and                     )
HARRY JAMES THORPE,                                 )
                                                    )
                    Defendants.                     )

This matter comes before the court on the parties' cross-motions for partial summary judgment, (DE 29, 31), on the issue of release. Specifically, the parties seek a determination as to whether a putative settlement agreement, entered into in the course of a prior litigation, operates to release plaintiff's claims in the instant suit. The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons stated more specifically below, the court holds the settlement agreement is unenforceable and does not release plaintiff's claims, grants plaintiff's motion for partial summary judgment, and denies defendants' motion on the same.

**STATEMENT OF THE CASE**

Plaintiff petitioned for relief under Chapter 13 of the Bankruptcy Code on October 20, 2009. Plaintiff subsequently initiated this case as an adversary proceeding in the United States Bankruptcy Court for the Eastern District of North Carolina on July 29, 2010. Plaintiff sues defendants Preferred Carolinas Realty, Inc. ("Preferred Carolinas"), James Allen, Jr., ("Allen"), Jim Allen Group, Inc. ("Allen Group"), and Harry James Thorpe ("Thorpe"), (collectively the "PCR defendants"), asserting common law claims for intentional infliction of emotional distress, fraud, constructive fraud, breach of fiduciary duty, negligence, gross negligence, and willful and wanton conduct, as well as a statutory claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. Plaintiff's claims arise out of an unsuccessful real-estate transaction, discussed more fully herein, in which defendants served as plaintiff's agents.

Defendants assert the affirmative defense of release. Defendants' defense is grounded in a putative settlement agreement (the "Contested Settlement Agreement"), entered into between plaintiff, defendants Preferred Carolinas and Allen, as well as other third parties not now before the court, in attempted resolution of a prior state court litigation arising out of the same unsuccessful real estate transaction ("State Proceedings"). Defendants Thorpe and Allen Group were not parties to the State Proceedings.

On August 30, 2010, the PCR defendants filed in the bankruptcy court a motion to dismiss for failure to state a claim upon which relief could be granted, or in the alternative for judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). On December 3, 2010, the bankruptcy court granted defendants' motion for judgment on the pleadings, insofar as it related to defendants Preferred Carolinas and Allen. The bankruptcy court grounded its order in

2

the doctrine of *res judicata*, finding that an order from the State Proceedings, directing plaintiff to dismiss his pending claims against defendants Preferred Carolinas and Allen, among others, in compliance with the terms of the Contested Settlement Agreement, precluded suit against those defendants in the instant matter. See Rodgers v. Preferred Carolinas Realty, Inc. (*In re* Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, 2010 WL 5014340, at *6 (Bankr. E.D.N.C. Dec. 3, 2010).

On July 12, 2011, this court vacated and remanded the bankruptcy court's order, as it related to defendants Preferred Carolinas and Allen. The court held that the bankruptcy court erroneously gave preclusive effect to the order entered in the State Proceedings. The court reasoned that such order was not a "final judgment on the merits," because it never became "final," as plaintiff did not dismiss his claims against defendants Preferred Carolinas and Allen. See Rodgers v. Preferred Carolinas Realty, Inc. (*In re* Rodgers), No. 5:11-CV-153-FL, slip op., at *8 (E.D.N.C. July 12, 2011).

On a subsequent appeal, filed by plaintiff challenging the bankruptcy court's order granting a motion to dismiss filed by various defendants who are no longer parties to this matter, the court questioned the bankruptcy court's constitutional authority to enter final, appealable orders, for reasons set forth in Stern v. Marshall, 564 U.S. ___, 131 S. Ct. 2594 (2011). The court remanded the case to the bankruptcy court for further consideration of its jurisdiction.

Later, the bankruptcy court entered order clarifying its basis for jurisdiction. The bankruptcy court found that it lacked constitutional authority to enter final orders on the basis set out in Stern. Nevertheless, the bankruptcy court also found that it had authority to make proposed findings of fact and recommendations of law under 28 U.S.C. § 157(c)(1).

3

On May 22, 2013, the PCR defendants renewed their motion for judgment on the pleadings in the bankruptcy court. On September 30, 2013, the bankruptcy court recommended denying the PCR defendants' renewed motion, proposing that this court find all plaintiff's claims were sufficient under North Carolina law and allow them to progress toward a final decision on the merits. Rodgers v. Preferred Carolina Realty, Inc. (*In re* Rodgers), Ch. 13 Case No. 09-09124-8-ATS, Adv. No. 10-00171-8-ATS (Bankr. E.D.N.C. Sept. 30, 2013).

On October 28, 2013, defendants filed in this court objections to the bankruptcy court's proposed conclusions of law. By order entered June 24, 2014, this court rejected the bankruptcy court's conclusion that plaintiff had stated a claim for intentional infliction of emotional distress, holding that plaintiff had not pleaded sufficiently "extreme or outrageous" conduct, as a matter of law. The court adopted the bankruptcy court's recommendations in all other respects. Rodgers v. Preferred Carolinas Realty, Inc. (*In re* Rodgers), No. 5:13-CV-00764-FL, slip op. (E.D.N.C. June 24, 2014). In addition, the court, on its own motion, withdrew this matter from the bankruptcy court, invoking subject matter jurisdiction under 28 U.S.C. § 1334(b). Thereafter, by consent order entered September 8, 2014, the court directed the parties to conduct discovery and file motions for summary judgment by January 15, 2015, addressing defendants' release defense, as it relates to the enforceability and effect of the Contested Settlement Agreement.

On January 15, 2015, plaintiff filed his motion for partial summary judgment on the issue of release, seeking to have the court declare unenforceable the Contested Settlement Agreement. In support of his motion, plaintiff argues that the Contested Settlement Agreement is an unenforceable "agreement to agree"; is missing certain provisions required by North Carolina's Statute of Frauds, N.C. Gen. Stat. § 22-2; and was executed under duress, undue influence, or as a

4

result of mutual mistake.[1]  On that same day, the PCR defendants submitted their own motion for

partial summary judgment, seeking a judicial determination that by signing the Contested Settlement

Agreement, a valid and enforceable contract, plaintiff released all claims arising out of the

unsuccessful real estate transaction.[2]

## STATEMENT OF FACTS

A.     The Unsuccessful Transaction

To facilitate understanding of the underlying motion, the court summarizes the following

facts pertinent to the State Proceedings, as background of the instant litigation.[3]  As noted, this suit

arises out of an unsuccessful real estate transaction.  Plaintiff was the owner of an unimproved parcel

of land, known as Lot 19, Great Falls Estates ("Lot 19"), in Wake County, North Carolina.  (Eichorn

Dep.  22:17-19; 32:12-14; see also id. 76:3-4).  After purchasing Lot 19, plaintiff hired Toth

Building, owned by Brandon Toth ("Toth"), to build a home on the lot.  (See Allen Dep. 67:4-15).

_____

[1] In support of his motion for partial summary judgment plaintiff relies upon documentary evidence, including the first "Offer to Purchase and Contract" signed by the Eichorns and Brandon Toth, (DE 30-2); an altered version of the "Offer to Purchase and Contract" with his signature written in over Brandon Toth's signature, (DE 30-5); a notice of *Lis Pendens* filed by Randall and Lisa Eichorn (the "Eichorns") in the Wake County Clerk of Court's Office, (Notice of Lis Pendens, DE 30-6); a motion seeking and order granting additional time to file complaint in the State Proceedings, filed by the Eichorns, (State Court App., DE 30-7); plaintiff's affidavit, (Rodgers Decl., DE 30-9); a copy of the handwritten Contested Settlement Agreement, (Contested Settlement Agreement, DE 30-10), an email from Sid Aldridge, counsel for the Eichorns, plaintiffs in the State Proceedings, to plaintiff in the instant matter, dated May 25, 2008, with a proposed settlement agreement attached, (DE 30-12); an email from Jim Johnson, attorney for Brandon Toth, a defendant in the State Proceedings, to plaintiff's then-attorney Celie Richardson, dated September 9, 2008, (DE 30-13); and a sample "Offer to Purchase and Contract," (DE 30-14).   Plaintiff also relies upon testimony by deposition of Randall Eichorn, (Eichorn Dep., DE 30-3); defendant Allen, (Allen Dep., DE 30-4); and plaintiff, including his deposition taken March 12, 2008, (Rodgers Dep., DE 30-8) and one taken October 14, 2014, (Rodgers Dep.  II, DE 30-11).

[2] In support of their motion for partial summary judgment, PCR defendants rely upon plaintiff's March 12, 2008, and October 14, 2014, depositions (DE 31-2, 32-3), together with certain documentary evidence also relied upon by plaintiff, as well as a report created after an inspection of the real estate at issue, dated May 23, 2008, (DE 32-4), and the affidavit of Dr. Andrew Drabick, plaintiff's physician, stating facts regarding plaintiff's physical condition at or near the time plaintiff purportedly assented to the terms of the Contested Settlement Agreement, (DE 32-7).

[3] This summary provides context for the instant dispute surrounding the Contested Settlement Agreement.  The recitation of these facts does not constitute a "finding of fact" binding on the court in resolving future motions.

5

Defendants Allen & Thorpe, through their employment with defendant Preferred Carolinas, were the exclusive sales agents for the Great Falls Estates development, where Lot 19 was located. (See Rodgers Dep. 76:5-12; 79:5-12; 134:13-21; 291:22-292:2).

In December 2005, Randall and Lisa Eichorn (the "Eichorns") contacted defendant Preferred Carolinas for the purpose of purchasing Lot 19 and the home under construction thereon. (Eichorn Dep. 11:13-18; 20:18-22). At that time, the Eichorns, as well as defendants Allen and Thorpe, were unaware plaintiff owned the lot, instead believing it was owned by Toth. (See Allen Dep. 66:15-67:17). As a result of that mistaken belief, defendants Allen and Thorpe began negotiating the purchase of the home with Toth, on the Eichorn's behalf. (See Eichorn Dep. 21:3-22:4). On December 8, 2005, Lisa Eichorn executed an "Offer to Purchase and Contract" Lot 19, which Toth also signed as the "seller." (Id. 15:12-18; 17:12-16; 23:9-13) On January 3, 2006, Randall Eichorn executed the same document. (Id. 32: 12-18)

After signing the Offer to Purchase and Contract, the Eichorns began negotiating with Toth, through defendants Allen and Thorpe, for additions or modifications to the home then under construction on Lot 19. (Id. 18:12-22:4). The Eichorns' requests altered the final purchase price for the home, but the parties did not set a final purchase price at the time such requests were made. (See Eichorn Dep. 75:21-76:21). During the course of these discussions, Allen discovered plaintiff, not Toth, was the owner of Lot 19. (Allen Dep. 66:15-67:16). After discovering Lot 19's true owner, defendants Preferred Carolinas, Allen, and Thorpe entered into a dual agency agreement, thereafter brokering the sale on behalf of both the Eichorns and plaintiff. (Id. 64:3-4; 65:6-17).

The mistaken ownership resulted in an error in the Offer to Purchase and Contract, which listed Toth as Lot 19's seller. In an attempt to resolve the error, Thorpe and Allen attempted to have

6

the Eichorns re-execute the Offer to Purchase and Contract in November 2006. (Eichorn Dep. 71:6-23). However, the Offer to Purchase and Contract presented to the Eichorns in November 2006, was not a new document. (Id. 74:6-76:4). Rather, it was the same Offer to Purchase and Contract previously executed, with Toth's name covered in white out, and plaintiff's written in. (Id.). Although not at issue here, the parties dispute whether plaintiff actually signed the November 2006 Offer to Purchase and Contract, or whether his signature was a forgery. (See Compl. ¶18; Allen Dep. 71:19-75:17).

The Eichorns refused to sign the modified Offer to Purchase and Contract, because it left open the final amount they were to pay for their requested modifications or additions to the proposed home. (Eichorn Dep. 75:21-76:21). On March 12, 2007, after the Eichorns and plaintiff were unable to agree on a final price for the home, complete with the Eichorns' requested modifications, the Eichorns filed a *lis pendens* against the property and subsequently initiated the State Proceedings against plaintiff, defendants Preferred Carolinas and Allen, as well as Toth, seeking specific performance. Eichorn v. Rodgers, 07 CVS 3902 (2007). (See Rodgers Decl. ¶18; State Court App.). In that action, plaintiff, there a defendant, asserted various cross-claims against his fellow defendants, including defendants Preferred Carolinas and Allen. (Rodgers Cross-claims, DE 19-5). On May 1, 2008, the parties to that litigation entered into a court ordered mediated settlement conference that yielded the Contested Settlement Agreement. (Rodgers Decl. ¶23; see also Contested Settlement Agreement).

 B.    The Contested Settlement Agreement

Mediation occurred over the course of one day, May 1, 2008, at a neutral site in Raleigh, North Carolina, beginning at 9:00 a.m. (Rodgers Dep. II, 19:6-20:4). Plaintiff was not an active

7

participant in the mediation. (See Rodgers Decl. ¶¶3-5). Rather, he resigned himself from the discussions, and his attorney, James Hairston, negotiated the Contested Settlement Agreement on plaintiff's behalf (Id.).

After several hours of discussion, plaintiff began to feel ill and informed Hairston that he would be leaving the mediation. (Id. ¶¶9-11). As plaintiff walked to his car, Hairston exited the mediator's office and chased plaintiff into the street. (Id.). There, Hairston presented plaintiff with the Contested Settlement Agreement. (Id.). After Hairston assured plaintiff the Contested Settlement Agreement was not final, plaintiff signed it. (Id.).

The Contested Settlement Agreement is a handwritten two-page document, which, in its entirety, reads:

> *Parties in the action Eichorn v. Rodgers, Allen, Prudential[4], and Toth, et all settle all claims on following basis:*
>
> *- Eichorns to purchase Lot 19, Great Falls Estate for Purchase Price of $425,000*
> *        Purchase subject to*
> *                1)        Good & marketable title, free and clear of all*
> *                        liens & encumbrances, taxes for year 2007 &*
> *                        prior years*
> *                2)        2008 taxes prorated*
> *                3)        House free of any wood destroying insects,*
> *                        mold, water damage*
> *                4)        All mechanical (HVAC, Hot water, plumbing,*
> *                        electrical) in good working order.*
>
> *        Eichorns to receive generator paid for by them*
>
> *        Closing within 60 days of this date*
>
> *-Toth & Toth Building to pay $15,000 to Rodgers within 60 days of this date*

---

[4] "Prudential" refers to "Prudential Carolinas Realty." The complaint filed in the bankruptcy court evidences that defendant Preferred Carolina "sometimes" does business as "Prudential Carolinas Realty." See Rodgers v. Preferred Carolinas Realty, Inc. (*In re* Rodgers), Ch. 13 Case No. 09-09124-8-JRL, Adv. No. 10-00171-8-JRL, Compl. (Bankr. E.D.N.C. July 29, 2010).

*-Prudential & Allen to pay $35,000 to Rodgers and waive claim for commission owed pursuant to listing Agreement*

*-Unless stated otherwise above, all monies shall be paid at time of closing*

*-Upon the completion of All Above conditions parties will file stipulation of dismissal of All claims & counterclaims in the Action with prejudice to be filed by* [The Eichorn's] *Attorney*

*-Mutual release to be executed by all parties*

*All parties bear own costs*

(Contested Settlement Agreement (punctuation, formatting, and grammar as in original)).

C.      Developments after the May 1, 2008, Settlement Conference

After signing the Contested Settlement Agreement, plaintiff refused to convey Lot 19 to the Eichorns in compliance with the terms of the Contested Settlement Agreement.  (See PCR Defendants' Motion to Enforce Contested Settlement Agreement in State Court, DE 19-9).  On July 3, 2008, a North Carolina court ordered plaintiff to comply with the Contested Settlement Agreement, convey Lot 19 to the Eichorns, and dismiss his cross-claims.  (Order Enforcing Contested Settlement Agreement, DE 19-10).  Plaintiff refused.  (See Order Enforcing Contested Settlement Agreement II, DE 19-12).  On August 25, 2009, the state court again ordered plaintiff to comply with the terms of the Contested Settlement Agreement. (Id.).  However, prior to plaintiff taking any action in that matter, plaintiff initiated bankruptcy proceedings on October 20, 2009, staying the State Proceedings.

**COURT'S DISCUSSION**

A.      Standard of Review

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials properly before the court demonstrates "that there is no genuine dispute

9

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual

dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is

sufficient evidence for a reasonable jury to find for the non-moving party). When faced with cross-

motions for summary judgment, the court must ask "whether the evidence presents a sufficient

disagreement to require submission to the jury or whether it is so one-sided that one party must

prevail as a matter of law." Id. at 251; see also Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir.

2003) ("[T]he court must review each motion separately on its own merits to determine whether

either of the parties deserves judgment as a matter of law.") (internal citations and quotations

omitted).

The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then

"set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co.

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is

sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.

Anderson, 477 U.S. at 250. In making this determination, the court must view the inferences drawn

from the underlying facts in the light most favorable to the nonmoving party. United States v.

Diebold, Inc., 369 U.S. 654, 655 (1962).

Nevertheless, "permissible inferences must still be within the range of reasonable probability,

. . . and it is the duty of the court to withdraw the case from the jury when the necessary inference

10

is so tenuous that it rests merely upon speculation and conjecture." <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." <u>Myrick v. Prime Ins. Syndicate, Inc.</u>, 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. <u>Id.</u> at 489-90.

B.    Analysis

    1.    Res Judicata/Collateral Estoppel

Defendants first argue application of the Full Faith and Credit statute, 28 U.S.C. § 1738, which embodies principles of res judicata and collateral estoppel, requires enforcement of the Contested Settlement Agreement. Defendants contend the Contested Settlement Agreement was incorporated into two orders issued in the State Proceedings directing plaintiff to comply with the Contested Settlement Agreement's terms, and that those orders constitute final judgments, which must be enforced against plaintiff by this court. For the reasons that follow, the court disagrees.

Federal courts must give state court judgments the same preclusive effect that would be given to the judgment under the laws of the state in which such judgment was rendered. <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984). Under North Carolina law, *res judicata*, or claim preclusion, applies where a party can show 1) a final judgment; 2) on the merits; 3) the same cause of action is involved in both suits; and 4) the party against whom res judicata is asserted was a party, or was in privity with a party, to the earlier suit. <u>Thomas M. McInnis & Assocs., Inc. v. Hall</u>, 318 N.C. 421, 429 (1986). Similarly, collateral estoppel, or issue preclusion,

11

applies to a litigation where in an earlier suit there was 1) a final judgment; 2) on the merits; 3) the issue in question was identical to an issue in the earlier suit; 4) that issue was actually and necessarily litigated; and 5) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the earlier litigation. Id.

This court previously has held the state court's order that the parties comply with the terms of the Contested Settlement Agreement did not constitute a "final judgment on the merits" sufficient to preclude further litigation under the doctrine of *res judicata*. Rodgers v. Preferred Carolinas Realty (*In re* Rodgers), No. 5:11-CV-153-FL, slip op., at *8 (E.D.N.C. July 12, 2011); see also Rodgers v. Preferred Carolinas Realty, No. 5:13-CV-161-FL, slip op., at *14 n.6 (E.D.N.C. Mar. 6, 2013). Defendants offer no new argument in support of their assertion that the state court's order has the force of a final judgment, and the court perceives no reason to revisit its prior conclusion. In addition, because the state court's order was not a "final judgment on the merits," collateral estoppel also is inapplicable and does not bar plaintiff's prosecution of his claims.

2.      Validity of the Contested Settlement Agreement

Defendants further contend, even if plaintiff's claims are not barred by either claim or issue preclusion, that plaintiff has released his claims under the terms of the Contested Settlement Agreement, as it is a valid and enforceable contract. In opposition to defendants' motion, plaintiff argues that the Contested Settlement Agreement is not a valid settlement and release, because it is an unenforceable agreement to agree, lacks sufficient definiteness to satisfy the Statute of Frauds, N.C. Gen. Stat. § 22-2, and is unenforceable by operation of the doctrines of duress and undue influence, as well as the doctrine of mutual mistake. For the following reasons, the court holds the

12

Contested Settlement Agreement is an unenforceable agreement to agree and does not operate as a release of plaintiff's claims. Accordingly, the court need not reach plaintiff's alternative arguments.

District courts have the inherent authority to enforce settlement agreements, deriving from their equity power. Millner v. Norfolk & W. Ry. Co., 643 F.2d 1005, 1009 (4th Cir. 1981); see also Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002). Settlement agreements are contracts, and are valid and enforceable where the parties' "minds . . . meet as to all the terms," see Chappell v. Roth, 353 N.C. 690, 692 (2001)(quoting Boyce v. McMahan, 285 N.C. 730, 734 (1974)), and the material terms are "definite within themselves or capable of being made definite." Brawley v. Brawley, 87 N.C. App. 545, 549 (1987). If the parties leave any of the material terms unsettled, they do not have a contract. Chappell, 353 N.C. at 692. Rather, in that case, the parties have entered into a mere agreement-to-agree, which is of no legal effect. See id.

In Chappell v. Roth, the parties entered into a mediated settlement agreement providing that defendant would pay $20,000.00 to plaintiff within two weeks of the agreement's execution, plaintiff would voluntarily dismiss all claims against defendant with prejudice, and the parties would execute a full and complete release "mutually agreeable to both parties." Id. at 691. However, the parties never executed an agreement defining the precise limits of the mutual release. Id.

On those facts, the North Carolina Supreme Court held, because the parties had intended mutual release to serve as consideration for the settlement agreement and because the parties never agreed on the terms of any such mutual release, the settlement agreement was unenforceable. Id. at 692. The court reasoned that the release was a material term of the settlement agreement, on which the parties never reached a meeting of the minds. Id. at 693. Because the parties had failed to agree to a material term of the settlement agreement, the entire agreement was of no effect. Id.

Chappell is indistinguishable from the case at bar, and thus controls this court's decision. The signatories to the Contested Settlement Agreement entered into that agreement with their minds toward resolution of the State Proceedings. In consideration for the Contested Settlement Agreement, plaintiff purportedly agreed to convey Lot 19 to the Eichorns, the Eichorns and plaintiff were to dismiss with prejudice their claims and cross-claims, respectively, and all signatories were to execute a mutual release. (Contested Settlement Agreement, at 1-2). However, it is undisputed that the signatories never executed any agreement defining the precise terms and limits of their "mutual release." Nor do the terms of the Contested Settlement Agreement provide a mechanism from which the court can infer the terms and limits of any such release. Without a separate agreement, or any contrary intention evidenced in the terms of the Contested Settlement Agreement, the signatories' actions evidence their intent that the Contested Settlement Agreement merely serve as a preliminary agreement to agree, which the court cannot and will not enforce.

Nevertheless, PCR defendants argue the plain terms of the Contested Settlement Agreement express the signatories' intent to execute a mutual release of all claims arising out of the unsuccessful real estate transaction. Even if defendants correctly state the signatories' subjective intent at the time the Contested Settlement Agreement was executed, Chappell forecloses on defendants' argument. In Chappell, the parties entered into a putative settlement agreement, stating that they were to execute a "full and complete [mutual] release." Chappell, 353 N.C. at 691. The North Carolina Supreme Court held the phrase "full and complete release" was not only insufficient to constitute a release itself but also insufficient to provide the court with a mechanism by which to enforce the terms of any such release. See id. at 692-93. Here, the Contested Settlement Agreement states "Mutual release to be executed by all parties." (Contested Settlement Agreement, at 2). This

14

language is less precise than that at issue in <u>Chappell</u>, which was held to be of no effect. The signatories to the Contested Settlement Agreement provided no indication that their release contemplated all claims arising out of the unsuccessful real estate transaction.

In sum, the Contested Settlement Agreement is not a contract evidencing the final expression of the signatories' intent. Nor is it enforceable by this court. It contemplates the future execution of a mutual release as consideration for settlement of all pending claims. Such mutual release is a material term, and where the parties' minds have not met as to all material terms, there is no contract. <u>See</u> <u>Chappell</u>, 353 N.C. at 692; <u>Brawley</u>, 87 N.C. App. at 549.

## CONCLUSION

Based on the foregoing, defendants' motion for partial summary judgment is DENIED. Plaintiff's motion for partial summary judgment is GRANTED. The Contested Settlement Agreement is of no effect and does not bar litigation of plaintiff's claims against defendants. Where the court's prior scheduling order (DE 28) addressed up to and including disposition of motions on this issue, the parties are hereby DIRECTED to confer and file with the court within 21 days a proposed schedule for disposition of the remaining case.

SO ORDERED, this the 1st day of July, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge