IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-764-FL

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROBERT V. RODGERS, | ) | |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| ROBERT V. RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| PREFERRED CAROLINAS | ) | |
| REALITY, INC.; JAMES E. ALLEN, | ) | |
| JR.; JIM ALLEN GROUP, INC.; and | ) | |
| HARRY JAMES THORPE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for entry of final judgment, pursuant to Federal Rule of Civil Procedure 54(b), or, in the alternative, interlocutory certification of the court's July 1, 2015, order, which denied defendants' cross motion for summary judgment. (DE 35). The court construes defendants' motion as one to reconsider the parties' cross motions for summary judgment. (DE 29, 31). Also before the court are plaintiff's motions for entry of a Rule 16 scheduling order and for hearing. (DE 42, 45). The issues are ripe for ruling. For the reasons stated herein, the court grants defendants' motion to reconsider, and upon reconsideration grants defendants' motion for summary judgment. Because defendants are entitled to summary judgment, plaintiff's motion for entry of a scheduling order and motion for hearing are denied.

# BACKGROUND

This case has as its beginning the unfortunate ending of a real estate transaction involving plaintiff, defendants, and various third parties. In essence, plaintiff alleges that defendants, acting as plaintiff's agents, sold a parcel of real property deeded in his name without his knowledge. Plaintiff further alleges that because of the fallout from that surreptitious deal, to which he ultimately acquiesced, he was driven into bankruptcy as a matter of necessity, through a series of defaulted loans.

A.    State Court Proceedings

On April 2, 2007, following a breakdown in communication between all parties interested in the disposition of plaintiff's property, the hopeful buyers (the "Eichorns") filed suit in the Wake County, North Carolina, Superior Court (the "Superior Court"), placing a <u>lis</u> <u>pendens</u> against the subject property and suing plaintiff,[1] as well as defendants Preferred Carolinas Realty ("PCR") and James E. Allen, Jr. ("Allen"), who also acted as the Eichorns's agents. (<u>See</u> DE 11-1, <u>Rodgers v.</u> <u>Preferred Carolinas Realty, Inc. (*In re* Rodgers)</u>,Ch. 13 Case No. 8:09-BK-9124-SWH, Adversary Proceeding No. 8:10-AP-171-SWH (Bankr. E.D.N.C.) ("<u>Adversary Proceeding</u>")). In particular, the Eichorns asserted against plaintiff a claim for specific performance, to compel his compliance with the terms of the agreed-to transaction, as well as a claim for breach of contract. Against defendants PCR and Allen, the Eichorns asserted claims for breach of contract, breach of fiduciary duty, negligence, fraud, constructive fraud, tortious interference with contract, and unfair and deceptive practices. The Eichorns sought punitive damages. On August 31, 2007, plaintiff answered the Eichorns's complaint, asserted an unjust enrichment counterclaim against the Eichorns,

---

[1]  Rodgers, the plaintiff in this action, was a defendant in the state court action. For ease of reference, all references to "plaintiff" refer to Rodgers. The "Eichorns" refers to the plaintiffs in the state court action.

and asserted a negligence crossclaim against his co-defendants in that action, defendants PCR and

Allen. (See DE 11-2, Adversary Proceeding, Adversary Proceeding No. 8:10-AP-171-SWH (Bankr.

E.D.N.C.)).

On May 1, 2008, the parties to the state court case undertook a mediated settlement

conference. At that conference, the parties drafted a rough settlement agreement (the "Contested

Settlement Agreement"), which has been at the heart of this case. The Contested Settlement

Agreement reads as follows:

> *Parties in the action Eichorn v. Rodgers, Allen, Prudential[2], and Toth,[3] et all settle all claims on following basis:*
>
> *- Eichorns to purchase Lot 19, Great Falls Estate for Purchase Price of $425,000*
>   *Purchase subject to*
>       *1)    Good & marketable title, free and clear of all liens & encumbrances, taxes for year 2007 & prior years*
>       *2)    2008 taxes prorated*
>       *3)    House free of any wood destroying insects, mold, water damage*
>       *4)    All mechanical (HVAC, Hot water, plumbing, electrical) in good working order.*
>
> *Eichorns to receive generator paid for by them*
>
> *Closing within 60 days of this date*
>
> *-Toth & Toth Building to pay $15,000 to Rodgers within 60 days of this date*
>
> *-Prudential & Allen to pay $35,000 to Rodgers and waive claim for commission owed pursuant to listing Agreement*

---

[2] "Prudential" refers to "Prudential Carolinas Realty." The complaint filed in the bankruptcy court evidences that defendant Preferred Carolina "sometimes" does business as "Prudential Carolinas Realty." (See DE 11-1, Adversary Proceeding, Adversary Proceeding. No. 8:10-AP-171-SWH (Bankr. E.D.N.C.)).

[3] Brandon Toth, as well as Toth & Toth Building, were defendants in the state court proceedings. Neither Toth nor Toth & Toth Building were named in plaintiff's adversary complaint.

*-Unless stated otherwise above, all monies shall be paid at time of closing*

*-Upon the completion of All Above conditions parties will file stipulation of dismissal of All claims & counterclaims in the Action with prejudice to be filed by* [the Eichorns's] *Attorney*

*-Mutual release to be executed by all parties*

*All parties bear own costs*

(Contested Settlement Agreement, DE 30-10) (punctuation, formatting, and grammar as in original). On May 1, 2008, plaintiff signed the Contested Settlement Agreement in its above-presented form. However, after signing the Contested Settlement Agreement, plaintiff refused to comply with its terms. Specifically, he refused to convey the subject property to the Eichorns, did not file a stipulation of dismissal, and did not execute a release.

On May 8, 2008, the Eichorns moved the Superior Court to compel plaintiff's compliance with the Contested Settlement Agreement. (DE 11-6, Adversary Proceeding, Adversary Proceeding No. 8:10-AP-171-SWH (Bankr. E.D.N.C.)). On that same day, defendants PCR and Allen also moved the Superior Court to compel plaintiff's compliance. (Id.). On July 2, 2008, the Superior Court granted the motions and ordered plaintiff to "perform all actions required by the [Contested] Settlement Agreement forthwith." (DE 11-7, Adversary Proceeding, Adversary Proceeding No. 8:10-AP-171-SWH (Bankr. E.D.N.C.)). Plaintiff refused and took an appeal of the Superior Court's order. Plaintiff's appeal subsequently was dismissed on motion of defendants PCR and Allen for failure to prosecute. (See DE 16-5, Rodgers v. Preferred Carolinas Realty Inc., No. 5:11-CV-153-FL (E.D.N.C. May 6, 2011) ("First Appeal"); DE 27-3, Adversary Proceeding, Adversary Proceeding No. 8:10-AP-171-SWH (Bankr. E.D.N.C.)).

4

Even after the North Carolina Court of Appeals dismissed plaintiff's appeal, plaintiff persisted in his non-compliance with the Contested Settlement Agreement. On August 24, 2009, on motions of the Eichorns and defendants PCR and Allen, the Superior Court again ordered plaintiff to comply with the terms of the Contested Settlement Agreement. (DE 11-8, Adversary Proceeding, Adversary Proceeding No. 8:10-AP-171-SWH (Bankr. E.D.N.C.)). Plaintiff took no action on the Superior Court's order and, instead, initiated bankruptcy proceedings under Chapter 13 of the United States Bankruptcy Code on October 20, 2009, staying the state proceedings. See generally In re Rodgers, Ch. 13 Case No. 8:09-BK-09124-SWH (Bankr. E.D.N.C.).

B.      Bankruptcy Proceedings

On July 29, 2010, plaintiff filed this case as an adversary proceeding related to his bankruptcy case. (See Compl., DE 1, Adversary Proceeding, Adversary Proceeding No. 8:10-AP-171-SWH (Bankr. E.D.N.C.)). The complaint named, among others, defendants PCR and Allen, both of which were parties to the state proceedings. The complaint also named as defendants Jim Allen Group, Inc. ("Jim Allen Group") and Harry James Thorpe ("Thorpe"), neither of which had been involved in the state proceedings. Against these and other defendants plaintiff asserted common law claims for 1) gross negligence, 2) fraud, 3) constructive fraud, 4) negligence, and 5) breach of fiduciary duty. In addition, plaintiff asserted statutory claims for violation of the Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75–1.1 et seq., as well as a claim for punitive damages, N.C. Gen. Stat. § 1D–15.

As relevant here, on August 30, 2010, defendants PCR, Allen, Jim Allen Group, and Thorpe filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Therein, defendants contended that the Contested Settlement Agreement was a binding agreement

and barred plaintiff's claims, among other things. On December 3, 2010, the bankruptcy court entered an order granting in part and denying in part defendants' motion. In particular, the bankruptcy court granted the motion as to defendants PCR and Allen, holding that the doctrine of res judicata barred plaintiff's claims, where the Superior Court's 2008 order incorporated by reference and enforced the Contested Settlement Agreement. However, the bankruptcy court denied the motion as to defendants Jim Allen Group and Thorpe, concluding that the Superior Court's 2008 order had no preclusive effect as to them because they had not been parties to the original litigation and were not in privity with any of the parties to that litigation .

On April 4, 2011, plaintiff appealed to this court the bankruptcy court's interlocutory order insofar as it granted defendants' motion. Plaintiff argued that the Superior Court's 2008 order was not entitled to claim preclusive effect because the state court case had been resolved, in effect, by consent judgment. Thus, plaintiff argued, the issues decided by the parties' consent judgment had not been "actually litigated." On July 12, 2011, the court entered order reversing the bankruptcy court's order as to defendants PCR and Allen. The court framed differently the dispositive issue and held that the Superior Court's 2008 order was not entitled to preclusive effect because there had been no "final judgment." Specifically, the court observed that plaintiff had yet to dismiss his claims, and reasoned that, even though a voluntary dismissal with prejudice typically is afforded preclusive effect under North Carolina law, because plaintiff had filed for bankruptcy, and because plaintiff's bankruptcy filing prevented him from dismissing his state court claims, the Superior Court's 2008 order was not "final" for purposes of res judicata. See First Appeal, No. 5:11-CV-153-FL, 2011 WL 12839850, at *4 (E.D.N.C. July 12, 2011).

On May 22, 2013, defendants renewed in the bankruptcy court their motion for judgment on the pleadings, again arguing that the Contested Settlement Agreement was a valid contract, and that plaintiff's claims were barred by its terms. On September 30, 2013, the bankruptcy court recommended to this court that defendants' motion be denied.[4] On October 28, 2013, defendants filed objections to the bankruptcy court's recommendation. Later, this court entered order affirming the bankruptcy court's recommendation in relevant part, holding that an analysis of the Contested Settlement Agreement required the court to consider matters outside the pleadings and, thus, was improper on a Rule 12(c) motion.

In that same order, the court, exercising its supervisory power, withdrew this matter from the bankruptcy court and invoked its subject matter jurisdiction under 28 U.S.C. § 1334(b). Upon withdrawal, the parties elected to bifurcate discovery and dispositive motions, addressing first the enforceability of the Contested Settlement Agreement. The parties subsequently filed summary judgment motions on that issue. On July 1, 2015, the court entered order denying defendants' motion for summary judgment as to the preclusive effect of the Contested Settlement Agreement and granting plaintiff's cross-motion for summary judgment on the same issue. In particular, the court held that the Contested Settlement Agreement was a mere agreement to agree, which did not preclude plaintiff's claims. Also in its July 1, 2015, order, the court reaffirmed its earlier holding on the effect of the Superior Court's 2008 order. Specifically, the court held that, notwithstanding the Superior Court's 2008 order's finding that the Contested Settlement Agreement was valid and enforceable, the court could not give the Superior Court's 2008 order claim or issue preclusive

---

[4] In the meantime, the bankruptcy court had determined that this case was "non-core," and, thus, that it did not have jurisdiction to enter appealable orders.

effect, where plaintiff had not dismissed his counterclaims. The court's reasoning rested on its prior analysis in the First Appeal. See generally 2011 WL 12839850, at *4.

Following the court's order, defendants timely filed the instant motion for entry of judgment, or in the alternative for interlocutory certification, pursuant to 28 U.S.C. § 1292(b).

## COURT'S DISCUSSION

A.      Standard of Review

 Unless certified as final, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n. v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003). "The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." Saint Annes Dev. Co. v. Trabich, 443 F. App'x 829, 832 (4th Cir. 2011) (quoting Am. Canoe, 326 F.3d at 514–15)); see also Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1473 (4th Cir. 1991) (stating that interlocutory orders "are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires").

"[D]octrines such as law of the case . . . have evolved as a means of guiding that discretion." Am. Canoe, 326 F.3d at 515 (citing Sejman v. Warner–Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988)). According to the law of the case doctrine, "earlier decisions of a court become law of the

case and must be followed unless '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" Am. Canoe, 326 F.3d at 515 (quoting Sejman, 845 F.2d at 69).

B.      Analysis

The court herein reconsiders that portion of its July 1, 2015, order holding that res judicata and collateral estoppel do not apply to preclude plaintiff's claims. These doctrines resolve fully this case, and, in that light, the court erred in considering the validity of the Contested Settlement Agreement. Failure to correct these errors would cause defendants to suffer continued and manifest injustice. As to defendants PCR, Allen, and Jim Allen Group, the Superior Court's 2008 order precludes plaintiff's claims. In addition, because the Superior Court's 2008 order held valid the Contested Settlement Agreement, it precludes relitigation of that issue between plaintiff and the signatories of that document. Finally, because the parties have stipulated that the Contested Settlement Agreement should be enforced uniformly against each defendant, (DE 26), the Superior Court's 2008 order also precludes litigation of the issue of the Contested Settlement Agreement's validity in the first instance against those defendants that did not sign the document.

1.      Res Judicata

Federal courts must give a state court's judgment preclusive effect to the same extent that judgment would be given preclusive effect in the courts of the state in which it was rendered. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). Under North Carolina's approach to the doctrine of res judicata, or claim preclusion, "a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies."

9

Whitacre P'Ship v. Biosignia, Inc., 358 N.C. 1, 15 (2004). "The doctrine prevents the relitigation of all matters that were or should have been adjudicated in the prior action." Id. (internal quotations and alterations omitted). The primary disputes in this case center on the first and third requirements: whether there was "a final judgment on the merits" in the Superior Court and, if such judgment exists, which, if any, parties here are bound by its effects.

The Fourth Circuit has recognized that in certain situations a district court may sua sponte raise the affirmative defense of res judicata. Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 (4th Cir. 2006). Allowing the court to raise any aspect of the defense in the first instance furthers the defendants' interest in avoiding repetitious litigation, as well as the important judicial interest of preventing duplicative, and sometimes conflicting, litigation. See id. Although sua sponte decision on un-briefed aspects of res judicata is a last resort, only to be raised in "special circumstances," such circumstances clearly exist here where this matter has been pending, in one form or another, for in excess of eight years. The court addresses each element of res judicata seriatim.

a.     Final Judgment

A "final judgment on the merits" is one "which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." Veazey v. City of Durham, 231 N.C. 357, 361–62 (1950). A final judgment is distinguishable from an interlocutory order, which "is one made during the pendency of an action, [and] which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." Id. at 362. In this case, the Superior Court's 2008 order enforcing the Contested Settlement Agreement is a final judgment. In its order, the Superior Court determined that the Contested Settlement Agreement represents a valid, binding agreement between the parties and

ordered plaintiff to comply with its terms. See Chappell v. Roth, 353 N.C. 690, 691–92 (2001). By its decision, the Superior Court removed itself from the controversy, leaving no avenue for plaintiff to challenge that order other than appeal or collateral attack. Moreover, the order's finality is highlighted by the North Carolina Court of Appeal's treatment of similar orders on appeal. For example, a granted motion to enforce a settlement agreement is treated as a granted motion for summary judgment on appeal. Hardin v. KCS Int'l, Inc., 199 N.C. App. 687, 694–95 (2009). Orders granting summary judgment, in turn, are considered to be final judgments under North Carolina law. See Tridyn Indus. v. Am. Mut. Ins. Co., 296 N.C. 486, 493 (1979); see also Williams v. Peabody, 217 N.C. App. 1, 6 (2011). Thus, the Superior Court's judgment was "final" in the sense that it left "nothing to be judicially determined between [the parties] in the trial court." Veazey, 231 N.C. at 361–62.

This conclusion contradicts the court's holding in its July 1, 2015, order. The July 1, 2015, order, however, relied extensively on the court's reasoning on the same issue from the First Appeal. In the First Appeal the court observed that "it is well settled that a voluntary dismissal of claims with prejudice constitutes a final judgment on the merits for purposes of res judicata," but that, in this case, it "[did] not appear . . . that the claims in state court were actually dismissed." First Appeal, 2011 WL 12839850, at *4. The court does not now recant that observation as an incorrect statement of the law; a voluntary dismissal with prejudice does indeed create a "final judgment" sufficient to bar relitigation of the same claims between the parties to the first suit or their privies. See Caswell Realty Assocs. I, L.P. v. Andrews Co., 128 N.C. App. 716, 720–21 (1998). However, that rule is a corollary of the more comprehensive rule announced in Veazey. Applying the Veazey rule, the Superior Court's 2008 order was final because it removed that court from the parties' dispute.

In any event, plaintiff also is judicially estopped from contesting the finality of the Superior Court's 2008 order. North Carolina recognizes the doctrine of judicial estoppel. <u>Whitacre</u>, 358 N.C. at 27–29. The doctrine applies to protect the integrity of the judicial process and it prohibits "parties from deliberately changing positions according to the exigencies of the moment." <u>Id.</u> at 28. Although the doctrine is not easily reduced to a list of factors, courts typically balance three considerations: 1) whether a party takes a subsequent position "clearly inconsistent" with its earlier position, 2) whether the party succeeded in persuading a court to accept its earlier position, so that judicial acceptance of the later, inconsistent position would affect judicial integrity, and 3) whether the party taking an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. <u>Id.</u> at 28–29.

The court finds that all three elements of judicial estoppel are satisfied. First, plaintiff previously took an appeal of the Superior Court's 2008 order, treating it as a final, appealable order under North Carolina law. <u>Goldston v. Am. Motors Corp.</u>, 326 N.C. 723, 726 (1990). Second, plaintiff persuaded the North Carolina Court of Appeals that the order was final, where it exercised jurisdiction over his appeal and dismissed the appeal on procedural grounds. <u>See</u> <u>Waters v. Qualified Personnel, Inc.</u>, 294 N.C. 200, 210 (1990) (interlocutory orders generally unappealable); <u>Hamilton v. Mortg. Info. Servs., Inc.</u>, 212 N.C. App. 73, 76–77 (2011) (same). Moreover, allowing plaintiff to change his position would harm judicial integrity, by undermining the finality of judgments, generally, and the Superior Court's 2008 order specifically. Although his appeal subsequently was dismissed for failure to prosecute, the fact of plaintiff's appeal evidences his position as to the finality of the Superior Court's 2008 order. Finally, allowing plaintiff to further propound the interlocutory nature of the Superior Court's 2008 order would unnecessarily extend

12

these proceedings to defendants' detriment. Thus, the court concludes, in addition to its prior holding that the Superior Court's 2008 order was final and appealable, that plaintiff is estopped from arguing that it was not.

### b. Same Cause of Action

The second element of res judicata, that the cases involve the "same cause of action," also is satisfied. <u>Whitacre</u>, 358 N.C. at 15. "Same cause of action" is construed broadly to encompass "all matters that were or should have been adjudicated in the prior action." <u>Id.</u> Plaintiff's claims in both this adversary proceeding, as well as in the state court matter, arise out of the failed real estate transaction. Thus, they are the "same cause of action" for purposes of res judicata.

### c. Identity of Party or Privity

Third, res judicata applies only where the claims are asserted against the original party, or another in privity with the original party. <u>Id.</u> at 35.

#### i. Defendants PCR and Allen

Defendants PCR and Allen both were sued by plaintiff in the state court proceeding before being sued a second time in this adversary proceeding. Thus, res judicata bars plaintiff's claims against them.

#### ii. Defendant Jim Allen Group

Plaintiff characterizes defendant Jim Allen Group as "the alter ego of [defendant] Allen operated as a shell entity under the complete dominion and control of Allen." (Compl. ¶4, <u>Adversary Proceeding</u>, Adversary Proceeding No. 8:10-AP-171-SWH (Bankr. E.D.N.C.)). However, defendant Jim Allen Group was not a party to the state court proceeding. Rather, plaintiff sued defendant Jim Allen Group for the first time in this adversary proceeding.

Because defendant Jim Allen Group was not a party to the original suit, plaintiff's claims against defendant Jim Allen Group are barred only if it is in privity with either defendant PCR or defendant Allen. "The meaning of 'privity' for res judicata purposes may be elusive." Settle *ex rel* Sullivan v. Beasley, 309 N.C. 616, 620 (1983). "There is no definition for the word 'privity' which can be applied in all cases." Masters v. Dunstan, 256 N.C. 520, 524 (1962). Generally speaking "privity. . . . denotes a mutual or successive relationship to the same rights of property." Settle, 309 N.C. at 620. Stated another way, "privity involves a person so identified in interest with another that he represents the same legal right." State *ex rel.* Tucker v. Frinzi, 344 N.C. 411, 417 (1996). Most recently, the North Carolina Supreme Court has characterized "privity" as the sharing of a property interest between two successors in interest. See Whitacre, 358 N.C. at 36. "In determining whether such a privity relation exists, courts will look beyond the nominal party whose name appears on the record as plaintiff and consider the legal questions raised as they may affect the real party or parties in interest." Id. (internal quotations omitted).

Under the circumstances of this case, res judicata precludes plaintiff's claims against defendant Jim Allen Group where plaintiff originally brought suit against defendant Allen, defendant Jim Allen Group's lone share holder. See Thompson v. Lassiter, 246 N.C. 34, 39 (1957); see also Smokey Mountain Enters. v. Rose, 283 N.C. 373, 376–78 (1973); Williams, 217 N.C. App. at 9. In particular, privity exists because defendant Allen, a party to the Superior Court's 2008 order, controls defendant Jim Allen Group. See id.

> Under North Carolina law,
>
> A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary interest or financial interest in the judgment or

in the determination of a question of fact or a question of law with reference to the same subject matter, or transactions.

Thompson, 246 N.C. at 39. A controlling party, seeking to bind an opposing party, also must show "the [opposing party] has notice of [the controlling party's] participation" in the previous suit. Id. Recently, the North Carolina Court of Appeals clarified the Thompson test and distilled three factors. Williams, 217 N.C. App. at 10–11. First, the court must determine whether the party to be bound, the asserted real party in interest, controls the instant suit and controlled the previous one. Id. at 210. Second, the court must determine whether that party has a proprietary or financial interest in the judgment rendered in both matters. Id. Third, the court must determine whether the controlling party has an interest "in the determination of a question of fact or a question of law with reference to the same subject matter, or transactions." Id. (internal quotations omitted).

Given plaintiff's own characterization of defendant Jim Allen Group as defendant Allen's alter ego, the court finds each of these factors met here. First, defendant Allen previously controlled his own litigation strategy and now controls the litigation strategy of both himself and his alter ego, defendant Jim Allen Group. Second, defendant Allen had a financial interest in both suits, where plaintiff sought money damages from him in the state court case and from both he and his alter ego, defendant Jim Allen Group, in the instant matter. Third, defendant Allen earlier had an interest in the resolution of both questions of fact and law arising out of the same transaction presently at issue. In particular, the state court suit, with respect to defendant Allen, centered on his individual conduct during the failed real estate transaction. The instant dispute also focuses on defendant Allen's conduct, both as an individual and in his capacity as a representative of defendant Jim Allen Group. Moreover, plaintiff, the party to be bound, obviously has notice of the controlling party's participation in both law suits; plaintiff sued defendant Allen in both cases. Accordingly, the court

15

determines that defendant Jim Allen Group is in privity with defendant Allen and plaintiff's claims against defendant Jim Allen Group properly are barred by res judicata.

iii.      Defendant Thorpe

Defendant Thorpe was not a party to the prior suit and thus must rely on privity. Plaintiff describes defendant Thorpe as an agent of defendants Allen and PCR. (DE 11-2, <u>Adversary Proceeding</u>, Adversary Proceeding No. 8:10-AP-171-SWH (Bankr. E.D.N.C. 2010)).

Defendant Thorpe's agency is not sufficient to place him in privity with either defendant PCR or defendant Allen. As a general rule, "[t]he relationship of principal and agent or master and servant does not create [the] privity [required to assert res judicata]." <u>Kayler v. Gallimore</u>, 269 N.C. 405, 408 (1967); <u>Gregory v. Penland</u>, 179 N.C. App. 505, 512 (2006). Rather, privity exists only where the principal and agent share a common interest in the outcome of the suit. <u>See, e.g.</u>, <u>Cline v. McCullen</u>, 148 N.C. App. 147, 150 (2001). Here, no such common interest is asserted as between either defendant PCR or defendant Allen, as principals, and defendant Thorpe, as agent. In addition, although these defendants share a common interest in the outcome of the suit, where defendants Allen and PCR potentially could be liable for damages caused plaintiff by defendant Thorpe, that shared interest is common across all principal-agent relationships and cannot, standing alone, create privity. <u>See</u> <u>Kayler</u>, 269 N.C. at 408; <u>Thompson</u>, 246 N.C. at 38.

In sum, plaintiff's claims against defendants PCR, Allen, and Jim Allen Group, are precluded by the Superior Court's 2008 order. However, even though the court concludes that plaintiff's claims are barred as to defendants PCR, Allen, and Jim Allen Group, the parties' stipulation on the enforceability of the Contested Settlement Agreement as to all parties (DE 26) has no effect at this

16

juncture, where the above res judicata analysis does not affect the Contested Settlement Agreement. (See DE 26).

    2.    Collateral Estoppel

To resolve issues pertaining to the validity of the Contested Settlement Agreement, the court turns to the doctrine of collateral estoppel and focuses its analysis on the issues necessarily raised by plaintiff, as well as defendants PCR and Allen, in their address of defendants PCR and Allen's motion to compel compliance with the Contested Settlement Agreement.

The court gives the Superior Court's 2008 order the same effect a North Carolina court would afford it. Migra, 465 U.S. at 81 (1984). Under North Carolina law, issue preclusion bars litigation of an issue, where "the issue in question [is] identical to an issue actually litigated and necessary to the judgment [in an earlier action], . . . the prior action resulted in a final judgment on the merits, and . . . the present parties are the same as, or in privity with, the parties to the earlier action." Sartin v. Macik, 535 F.3d 284, 287–88 (4th Cir. 2008). Whether the issue in question is identical to an issue actually and necessarily litigated requires satisfaction of four additional criteria:

> (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

Id. at 288.

In addition, although issue preclusion has been briefed sparsely, if at all, the Fourth Circuit has recognized that in certain situations a district court may sua sponte raise the affirmative defense of collateral estoppel. See Eriline, 440 F.3d at 655 (court may apply res judicata sua sponte); Doe

v. Pfrommer, 148 F.3d 73, 80 (2d Cir. 1998) (applying same rule to collateral estoppel).  As with its earlier discussion of res judicata, the court finds that <u>sua</u> <u>sponte</u> address of collateral estoppel is warranted here.

The Superior Court's 2008 order collaterally estops plaintiff from relitigating the validity of the Contested Settlement Agreement.  To enter its 2008 order, the Superior Court was required to determine that the Contested Settlement Agreement was a valid, enforceable contract.  <u>See, e.g.</u>, <u>Chappell</u>, 353 N.C. at 691–92; <u>Northington v. Michelotti</u>, 121 N.C. App. 180, 184 (1995).  Thus, there can be no argument that the validity of the Contested Settlement Agreement was not actually litigated before the Superior Court.  In addition, the court finds that litigation of that issue was material and relevant to the disposition of the prior action, where a finding that the Contested Settlement Agreement was valid was a necessary prerequisite to the Superior Court's order.  Finally, the court herein has resolved the most contentious issue with respect to application of the collateral estoppel defense, whether the Superior Court's 2008 order was a "final judgment on the merits" under North Carolina law.  Thus, where the parties necessarily and actually litigated the validity of the Contested Settlement Agreement prior to the Superior Court's 2008 order, plaintiff is estopped from again litigating that issue.

Plaintiff's attempts to draw parallels between the Superior Court's 2008 order and a consent judgment are unpersuasive.  Consent judgments generally do not satisfy the requirements of issue preclusion, because the critical issues resolved are not "actually litigated," but, rather, are the product of exogenous agreement.  <u>See</u> <u>McLeod</u>, 266 N.C. at 153.  However, the Superior Court's 2008 order is unlike a consent judgment.  In particular, it was rendered after plaintiff was given the opportunity to be heard on defendants' motion to enforce the Contested Settlement Agreement.

18

Thus, where plaintiff had the opportunity to be heard, the issue-preclusive effect of that order cannot be contested. See Whitacre, 358 N.C. at 15. Accordingly, the court concludes that the Superior Court's order directing plaintiff to dismiss his claims consistent with the terms of the Contested Settlement Agreement acts as a final judgment in the matter and that it is issue preclusive as to the enforceability of the Contested Settlement Agreement.

Where the court has concluded that plaintiff cannot dispute the validity of the Contested Settlement Agreement in light of the Superior Court's 2008 order, the court next must determine the scope of the release contained in the Contested Settlement Agreement. Stated another way, the only issue remaining is whether the Contested Settlement Agreement was meant to settle only the claims asserted in the state court litigation, or all claims that potentially could have been asserted in that case. Plaintiff's claims in this case are barred by that agreement only if the mutual release provision is so broad as to cover all claims potentially arising out of the transactions at issue in the state court case.

Although the Contested Settlement Agreement's mutual release provision is silent as to its scope, the court concludes that the mutual release provision encompasses any claim arising out of the defunct real estate transaction at the heart of this dispute, not just those pleaded in the state court case. See Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc., 973 F.2d 349, 352–53 (4th Cir. 1992). Under North Carolina law a contract is to be construed as a whole, and the court is to give effect to each provision. See Robbins v. C.W. Myers Trading Post, 253 N.C. 474, 477 (1960); Marcoin, Inc. v. McDaniel, 70 N.C. App. 498, 503–04 (1984). The Contested Settlement Agreement's distinct settlement provision states that the Contested Settlement Agreement's purpose is to "settle all claims" between the parties to the state court case. That

purpose is confirmed by the later provision obligating "dismissal of all claims and counterclaims in the action with prejudice." (Contested Settlement Agreement). To read the "mutual release" provision as covering only the claims asserted in the state court case would render the mutual release provision duplicative of the settlement provisions, which already resolved the finite set of claims asserted by the parties to that litigation. Thus, the court holds that the Contested Settlement Agreement bars all claims potentially arising out of the transactions at issue in the state court litigation.

Consistent with the above, plaintiff is estopped from challenging the validity of the Contested Settlement Agreement as to its signatories, defendants PCR and Allen, and with respect to all claims that potentially could have been asserted in the state court proceeding. In addition, where the parties have stipulated that the Contested Settlement Agreement should be applied uniformly to each defendant (DE 26), the court holds that the Superior Court's 2008 order directing plaintiff's compliance with the Contested Settlement Agreement is issue preclusive as to the enforceability of that agreement against plaintiff by all defendants.

## CONCLUSION

Based on the foregoing, the court CONSTRUES defendants' motion for interlocutory certification (DE 35) as a motion for reconsideration and GRANTS the motion. Upon reconsideration the court VACATES its order on the parties' cross motion for summary judgment, GRANTS defendants' motion for summary judgment (DE 31) for the reasons outlined above, and DENIES plaintiff's motion for same. (DE 29). Given that, plaintiff's motion for implementation of a Rule 16 scheduling order (DE 42) is DENIED as MOOT. Plaintiff's motion for hearing (DE 45) also is DENIED because the facts and legal contentions are adequately presented in the briefs

and argument would not aid significantly in the decisional process. The clerk of court is

DIRECTED to close this case.

SO ORDERED, this the 8th day of March, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge